647 P.2d 1194

**Francis H. BEAUGUREAU and Margaret A. Beaugureau, husband and wife, Plaintiffs-Appellants,**

v.

**The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, a New York corporation, Defendant-Appellee.**

**No. 1 CA–CIV 5367.**

Court of Appeals of Arizona, Division 1, Department B.

May 13, 1982.

Rehearing Denied June 16, 1982.

Review Denied July 7, 1982.

McLoone, Theobald & Galbut, P. C. by David L. Beaugureau, Anthony J. Hancock, Phoenix, for plaintiffs-appellants.

Evans, Kitchel & Jenckes, P. C. by Leon D. Bess, Milton K. Harsh, Phoenix, for defendant-appellee.

## OPINION

GRANT, Judge.

Appellants Francis H. and Margaret A. Beaugureau commenced this action in Maricopa County Superior Court against the Equitable Life Assurance Society of the United States (Equitable) asserting Equitable's wrongful refusal to honor major medical insurance claims. Summary judgment was granted in favor of Equitable by the trial court on March 4, 1980 and this appeal followed. We affirm the trial court.

The following facts giving rise to this litigation were undisputed. In 1978 Margaret Beaugureau was hospitalized for medical care associated with an emotional condition and incurred medical expenses of approximately $3,400.00 for which Equitable denied coverage. These expenses included various charges by Wilmot Psychiatric Hospital and two physicians who provided psychotherapy at the hospital.

Equitable denied appellants' claims for these charges pursuant to the following provision of its policy:

> Charges shall not be covered under this policy if such charges are incurred in connection with any of the following:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> 2. Nervous or mental disease or disorder, except such charges incurred during confinement in a Hospital other than an institution specializing in the treatment of such disease or disorder.

The Beaugureaus argue that this policy provision does not exclude coverage for the services received by Mrs. Beaugureau at Wilmot Psychiatric Hospital because: (1) the term "institution" does not include a "hospital," (2) Wilmot Psychiatric Hospital's exchange of services contract and affiliation agreement with St. Joseph's Hospital (a full-service hospital) rendered it also a full-service hospital, and (3) Mrs. Beaugureau's admission to St. Joseph's Hospital as a condition of admission to Wilmot Psychiatric Hospital resulted in her "confinement" in a hospital that does not specialize in the treatment of nervous and mental diseases or disorders.

We first consider Beaugureaus' argument with respect to the proper construction of "institution" within the exclusionary clause in their policy. They contend that Equitable must have intended a definitional difference between "hospital" and "institution" or the two terms would not have been used side by side in the policy. They further argue that had Equitable intended to exclude coverage for treatment in hospitals which specialize in the care of nervous and mental conditions, it would have used the

**598**

term "hospital." Finally, they argue that since the policy fails to define "institution," it must be construed against Equitable.

While appellants correctly state that an ambiguity in an insurance policy will be construed against the insurer, this rule is only applicable when, after considering all provisions of the policy, it is not possible for the court to ascertain the meaning of the language when applied to the facts before it. *Hampton v. Allstate Insurance Co.*, 126 Ariz. 403, 616 P.2d 78 (App. 1980). We do not find the policy provision involved in this case to be ambiguous. While we agree that a definitional difference is appropriately implied from the use of "hospital" and "institution" in the same provision, we are not persuaded that the use of the term "institution" was intended to exclude "hospital." Although clauses limiting insurance benefits are strictly construed in favor of the insured, they must be construed in a reasonable manner giving ordinary meaning and effect to the terms used. *Pawelczyk v. Allied Life Insurance Co.*, 120 Ariz. 48, 583 P.2d 1368 (App.1978); *Mission Insurance Co. v. Nethers*, 119 Ariz. 405, 581 P.2d 250 (App.1978); *Granite State Insurance Corp. v. Mountain States Tel. and Tel. Co.*, 117 Ariz. 432, 573 P.2d 506 (App. 1977). In the context in which it is used in the policy, "institution" is usually understood to be a general term which may encompass a hospital, among other organizations. *See* Webster's Third New International Dictionary (unabr. 1969).[1] Although "institution" is not expressly defined in the policy itself, the term "hospital" is defined as a legally constituted and operated "*institution*" having certain functions.[2]

A reasonable construction of the policy provision in question is that although services for mental conditions which are provided in hospitals generally are covered, such services are not covered when received in any institution, including a hospital, which specializes in the treatment of nervous and mental diseases and disorders.

We turn next to appellants' claim of error based on the close relationship between Wilmot Psychiatric Hospital and St. Joseph's Hospital. Wilmot and St. Joseph's are separately organized hospitals whose facilities are located across the street from each other in Tucson, Arizona. St. Joseph's and Wilmot had a contractual exchange of services agreement at the time of Mrs. Beaugureau's hospitalization. The hospitals had different administrators, boards of directors, and state license numbers. Some doctors worked in both hospitals and patients admitted to one hospital were simultaneously admitted to the other and had access to services in both hospitals.

Equitable argues that the mere availability of the services of another hospital through an affiliation agreement does not alter the nature of Wilmot Psychiatric Hospital. It is still an institution specializing in the treatment of nervous or mental diseases or disorders. We agree.

Appellants appear to argue that through its affiliation with St. Joseph's, Wilmot has become more than a hospital specializing in psychiatric care; it has become a full-service hospital that does not specialize. However, the evidence was uncontroverted that St. Joseph's and Wilmot are separate entities and that the affiliation was limited to an exchange of services. This separateness is supported by recital six in the affiliation agreement which provides:

If Wilmot Psychiatric Hospital patients need to be admitted to St. Joseph's Hospi-

---

1. Webster's defines "institution" as

   3: ... a(1): a significant and persistent element (as a practice, a relationship, an organization) in the life of a culture that centers on a fundamental human need ... b: an established society or corporation: an establishment or foundation esp. of a public character ...
   Webster's Third New International Dictionary 1171 (unabr. 1969).

2. The policy provides:

   As used in this policy, the term "hospital" means a legally constituted and operated institution (other than a home for the aged, chronically ill or convalescence, or rest or nursing home) having organized facilities for the care and treatment of sick and injured persons, including facilities for diagnosis and major surgery and providing twenty-four hour nursing service and medical supervision.

tal as inpatients for care, they will be transferred with suitable records, and St. Joseph's Hospital shall reciprocate as concerns suitable records.

Appellants cite *Reserve Life Insurance Co. v. Mattocks*, 6 Ariz.App. 450, 433 P.2d 303 (1967) to support their position. While this case unquestionably holds that a facility such as Wilmot Psychiatric Hospital could in fact qualify as a hospital because of its access to the diagnostic, therapeutic and surgical services of St. Joseph's, it does *not* address the construction of a policy provision which clearly excludes treatment in certain kinds of hospitals, that is, hospitals specializing in the treatment of mental disorders.

Finally, we consider the argument that because Mrs. Beaugureau was technically admitted to St. Joseph's as part of her admission to Wilmot, this resulted in her "confinement" to St. Joseph's. It is argued that since Mrs. Beaugureau was confined to St. Joseph's she came within the policy provisions because her charges at Wilmot were incurred while she was "confined" in a non-specialty hospital.

Beaugureaus provided no authority for their assertion that Mrs. Beaugureau was "confined" in St. Joseph's. The facts are undisputed that the charges incurred by Mrs. Beaugureau were for a time in which she was housed and treated in Wilmot. The mere fact that some doctors work in both hospitals and patients admitted to one hospital have access to the other's facilities in no way supports the argument that Mrs. Beaugureau was "confined" in St. Joseph's Hospital.

We find no error in the trial court's conclusion that the charges incurred by Mrs. Beaugureau while being treated at Wilmot Psychiatric Hospital are not covered pursuant to appellants' policy with Equitable.

Judgment affirmed.

JACOBSON, P. J., and RICHARD M. DAVIS, Judge Pro Tem., concur.

NOTE: The Honorable RICHARD M. DAVIS, Judge *pro tempore* of a court of record, was authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court pursuant to Ariz.Const. art. VI, § 20.