Ramona GROSS, Personal Representative of the Estate of Burton Gross

v.

GREEN MOUNTAIN INSURANCE COMPANY.

Supreme Judicial Court of Maine.

Argued Jan. 6, 1986.

Decided March 24, 1986.

Charles E. Trainor (orally), Robert A. Laskoff, Lewiston, for plaintiff.

Berman, Simmons & Goldberg, P.A., Paul Macri (orally), Jeffrey Rosenblatt, Lewiston, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

NICHOLS, Justice.

The Plaintiff, Ramona Gross, Personal Representative of the estate of Burton Gross, appeals from an order of the Superior Court (Androscoggin County) granting summary judgment for the Defendant, Green Mountain Insurance Company, thereby precluding the Plaintiff from "stacking" the uninsured motorist coverages of two insurance policies. The Plaintiff argues that the Superior Court erred in ordering summary judgment because the court erroneously concluded that an exclusion provided in the insurance policy issued to the Plaintiff's decedent is valid.

We disagree and affirm the entry of summary judgment.

On June 13, 1984, Burton Gross sustained fatal injuries in a collision between an automobile and the motorcycle he was riding in Lewiston, at a time when Gross was insured under two separate insurance policies obtained through Green Mountain Insurance Co. for which he paid separate premiums. One policy named as the insured vehicle the Honda motorcycle he was operating at the time of the fatal accident; the other policy designated two automobiles as insured vehicles. The policy on the motorcycle provided uninsured motorist coverage in the amount of $40,000; the policy on the two automobiles provided uninsured motorist coverage in the amount of $100,000 for each person, $300,000 for each occurrence.

All proceeds available under the liability policy of the operator of the automobile involved in this fatality were turned over to the Plaintiff within several weeks of Gross' death.

With the limited coverage thus available to her, the Plaintiff claims that the operator of the automobile was an uninsured motorist under the terms of Gross' insurance policy and under 24-A M.R.S.A. § 2902(1) (Supp.1985). As such, the Plaintiff contends she is entitled as a matter of law to collect $90,000 from the Defendant; this being the difference between the $140,-000 total of Gross' two insurance policies and the sum of $50,000 paid to Gross' es-

tate by the automobile operator's insurance company.

The single issue on appeal is the validity of the provision in the insurance policy issued on Gross' motorcycle precluding an insured from "stacking" uninsured motorist coverage in separate policies owned by the insured when he is operating one of the several insured vehicles at the time of the accident.

■■■ The Plaintiff first argues that the exclusion is invalid because the very general coverage afforded to the named insured in the policy is substantially reduced by taking away in a later provision coverage granted him in an earlier provision. Exclusions and exceptions in insurance policies are generally not favored. *See* Appleman, *Insurance* § 7483 (1981). Standard insurance policies, having been drafted by the insurers, will be construed most strongly against them. *Baybutt Construction Corp. v. Commercial Union Ins.*, 455 A.2d 914, 921 (Me.1983). Whether comprehensive general coverage provided in a policy will be excluded by virtue of the operation of separate clauses of exclusion depends upon whether, when viewed as a whole, the exclusion clauses unambiguously and unequivocally negate coverage. *Id.*

■■■ In the policy issued to Gross the general uninsured motorist coverage provides under the section entitled "Insuring Agreement:"

We will pay damages which a *covered person* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle* because of bodily injury:

1. Sustained by a *covered person;* and

2. Caused by an accident.

(Emphasis in original). The succeeding section entitled "Exclusions" provides *inter alia:*

A. We do not provide Uninsured Motorist Coverage for bodily injury sustained by any person:

1. While *occupying,* or when struck by, any motor vehicle owned by you or any *family member* which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

(Emphasis in original). Otherwise stated, if an insured owns more than one vehicle, he has no uninsured motorist coverage when he is in the second vehicle unless he specifically insures the second vehicle for such coverage. The exclusionary language does limit the coverage afforded in the general coverage provision. However, the law is not that an insurer cannot place limits on general coverage provisions as the Plaintiff appears to argue; rather, the law is that if the insurer so limits coverage, it must be done unambiguously and unequivocally. The provision at issue here is not one of fifteen seemingly inconsistent exclusions as were those which were held invalid in *Baybutt Construction.* Rather, it is the first of six exclusions that immediately follow the general coverage provision and are clearly delineated in bold print as exclusions. Further, the exclusionary language is such that "an ordinary person in the shoes of the plaintiff" would understand that the policy does not cover claims for injury sustained in an accident with an uninsured motorist involving a vehicle owned by the policy holder which is not covered by this particular policy. Therefore, we reject the Plaintiff's argument.

The Plaintiff next asserts that the provision at issue here is void and unenforceable because it violates 24–A M.R.S.A. § 2902 and is against public policy. That statute provides in pertinent part:

1. No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto for the protec-

tion of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, resulting from the ownership, maintenance or use of such uninsured, underinsured or hit-and-run motor vehicle. The coverage herein required may be referred to as "uninsured vehicle coverage." For the purposes of this section, "underinsured motor vehicle" means a motor vehicle for which coverage is provided, but in amounts less than the minimum limits for bodily injury liability insurance provided for under the motorist's financial responsibility laws of this State or less than the limits of the injured party's uninsured vehicle coverage.

2. The amount of coverage to be so provided shall not be less than the minimum limits for bodily injury liability insurance provided for under Title 29, section 787, subsection 1.

24–A M.R.S.A. § 2902 (Supp.1985). The Plaintiff cites several cases from other jurisdictions in support of her argument that once a person has paid a premium for uninsured motorist coverage, he is entitled to that protection no matter what vehicle he is in when injured by an uninsured motorist. In *Brackett v. Middlesex Insurance Company*, 486 A.2d 1188, 1190 (Me.1985) we recognized the split of authority on this issue and rejected the same argument as is advanced by the Plaintiff here. We find no compelling reason to reverse that decision a year later.

■ As we noted in *Dufour v. Metropolitan Property and Liability Insurance Company*, 438 A.2d 1290, 1292 (Me.1982), the purpose of the uninsured motorist statute is to afford to each owner of an automobile liability insurance policy a minimum standard of protection against the uninsured motorist. In *Dufour*, we concluded that our uninsured motorist statute does not require "stacking" when two or more cars are insured under a single policy, even though separate premiums are paid, so long as the insurance contract clearly and unambiguously restricts coverage to a specified amount greater than the statutory minimum. In *Brackett* we held that an insurer that provided uninsured motorist coverage for a motorist's automobile, but that did not provide coverage for his motorcycle, was not compelled by section 2902 to extend coverage to the motorist for injuries incurred while he was operating the uninsured motorcycle. Thus in two recent cases we have declared that uninsured motorist coverage as required by section 2902 may be limited to persons operating certain vehicles and does not require coverage for the insured in all situations.

The Plaintiff further contends that "stacking" should be allowed under the facts of this case because the decedent had insurance on both his automobiles *and* on his motorcycle, while in *Brackett* the plaintiff did not have insurance on the motorcycle he was riding when he had the accident. This distinction has force against the argument that allowing "stacking" here will encourage multi-vehicle owners to insure only one vehicle and take a "free ride" on their other vehicles. However, the Plaintiff fails to offer any rational basis for allowing a motorist who has insured two vehicles under two separate policies to "stack" uninsured motorist coverage when a motorist who has insured two vehicles under a single policy, yet pays two premiums, cannot. *See Dufour v. Metropolitan Property and Liability Insurance Company*, 438 A.2d 1290 (Me.1982).

Finally, the Plaintiff attempts to distinguish her case from *Brackett* by asserting that the insuring agreement in the uninsured motorist provision of the insurance policy in *Brackett* was much more restrictive than the provision in the policy at issue here, and thereby immediately alerted the purchaser to the coverage limitations.

Limitations of coverage, if they are not against public policy and are unambiguous, unequivocal and clearly delineated, are not more onerous because they are contained in a separate exclusion paragraph rather than excluded by the limiting language of the general coverage provision. If the admittedly more restrictive coverage provided in *Brackett* is permissible, the less restrictive coverage provided here is *a fortiori* lawful.

The entry is:

Judgment affirmed.

All concurring.